UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAHAR ABBAS A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C22-1162-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing certain medical opinions. (Dkt. # 14 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1976, completed secondary school in Iraq, and has no work history. AR at 185-86, 328, 1030-31. In December 2016, Plaintiff applied for benefits, alleging disability as of March 1, 2003. *Id*. at 175-76. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 101-04, 108-15. After the ALJ

ORDER - 1

conducted a hearing in August 2018 (*id*. at 34-70), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 18-28.

The Appeals Council denied Plaintiff's request for review (AR at 1-6), and Plaintiff sought judicial review. The U.S. District Court for the Western District of Washington granted the parties' stipulated motion to reverse the ALJ's decision and remand for further administrative proceedings. *Id*. at 1066-79. On remand, the ALJ held another hearing (*id*. at 1014-40), and subsequently issued a decision finding Plaintiff not disabled. *Id*. at 983-1007.

As the Appeals Council did not assume jurisdiction of the case, the ALJ's decision is the Commissioner's final decision. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 7.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.   DISCUSSION

Plaintiff argues that the ALJ erred in discounting certain opinions written by treating and examining acceptable medical sources and non-acceptable medical sources.[1] (Dkt. # 14.) Where not contradicted by another doctor, the opinion of a treating or examining acceptable medical source may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ must provide germane reasons to discount an opinion written by a non-acceptable medical source. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (lay testimony from non-acceptable medical sources may be expressly disregarded if the ALJ gives germane reasons for doing so). The Court will address each disputed opinion in turn.

---

[1] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. § 416.927 apply to the ALJ's consideration of medical opinions. Social Security regulations applicable to this case distinguish between "acceptable medical sources" and "medical sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified providers are called "medical sources." 20 C.F.R. §§ 416.902, 416.927(f).

ORDER - 3

### A.     David Dixon, Ph.D.

Dr. Dixon performed a consultative psychological examination[2] of Plaintiff in March 2017 and wrote a narrative report describing her symptoms and limitations. AR at 313-19. Dr. Dixon's medical source statement reads as follows, in pertinent part:

> The claimant was able to satisfactorily explain and justify her position and demonstrate rational grounds of explanation, although she is depressed and it affects her ability. Her educational 8th grade level affects it as well. Her ability to reason was fair to poor, and affected by passive tendencies and a dependence on others. Her ability to understand is at the average range. [H]er sustained concentration was fair and her persistence was fair. Her ability to interact socially is affected by reserved and depressed tendencies.
>
> She would not adapt to new environmental conditions, and has not adapted. I do believe her capable of handling funds in her own best behalf.

*Id*. at 318.

The ALJ gave limited weight to Dr. Dixon's opinion, noting that although he had the opportunity to examine and observe Plaintiff, he did not have access to any of her treatment notes or other parts of the longitudinal record. AR at 1003. The ALJ also noted that Dr. Dixon's medical source statement is "not articulated in precise vocational terms" because he did not identify specific functional limitations, and it is therefore of "limited utility" in assessing Plaintiff's RFC. *Id*. To the extent that Dr. Dixon's conclusions could be interpreted to mean that Plaintiff had disabling functional limitations, the ALJ indicated that he discounted those conclusions as inconsistent with the record for the same reasons that the ALJ found Plaintiff's allegations to be inconsistent with the record. *Id*.

---

[2] Although Plaintiff emphasizes that Dr. Dixon examined her at the Commissioner's request (dkt. # 14 at 2-3), she cites no authority requiring or even suggesting that, simply because the Commissioner develops the record via consultative examination, the Commissioner is then required to credit whatever opinion is issued as a result. The Court is not aware of any authority to support such a suggestion.

ORDER - 4

Plaintiff contends that the ALJ failed to provide any specific and legitimate reasons to discount Dr. Dixon's opinion, but the Court disagrees. The ALJ reasonably found that the vagueness with which Dr. Dixon defined Plaintiff's limitations undermined its probative value. Dr. Dixon indicated that certain abilities were "affect[ed]" by Plaintiff's symptoms without further specification of the degree to which those abilities were affected, and Dr. Dixon's use of the term "fair" does not indicate the most that Plaintiff can do in any particular area. *See* AR at 318. Accordingly, the ALJ reasonably discounted Dr. Dixon's opinion on this basis. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC."). Although Plaintiff suggests that the ALJ should have recontacted Dr. Dixon for clarification if he found his opinion to be vague, Plaintiff has not shown that that remedy was appropriate here, given that the ALJ had access to longitudinal records, as well as other medical opinions, to inform his RFC assessment. *See id.* (holding that because the ALJ had access to plaintiff's longitudinal record, the duty to further develop the record was not triggered by vagueness in one medical opinion).

Because this line of the ALJ's reasoning alone supports discounting Dr. Dixon's opinion, any error in the other lines of reasoning is harmless. The Court therefore affirms the ALJ's assessment of Dr. Dixon's opinion.

      **B.**     **William Wilkinson, Ed.D. & Holly Petaja, Ph.D.**

Drs. Wilkinson and Petaja examined Plaintiff in May 2017 and November 2021, respectively, and completed DSHS opinions describing disabling mental limitations on each occasion. AR at 374-81, 1638-43. The ALJ noted that neither examiner had access to Plaintiff's

longitudinal records, and that neither examiner completed all parts of a mental status examination. *Id*. at 1002-03. The ALJ also found some of the examiners' conclusions to be inconsistent with their own findings or with other parts of the longitudinal record. *Id*. at 1003. Lastly, the ALJ noted that some of the checkbox limitations were vague and amounted to an opinion that Plaintiff was disabled, which is an issue reserved to the Commissioner. *Id*. For these reasons, the ALJ gave little weight to the opinions of Drs. Wilkinson and Petaja. *Id*. at 1002-03.

The ALJ reasonably discounted the opinions based on the examiners' incomplete examination findings. Dr. Wilkinson indicated a limited ability to assess Plaintiff's thought content and perception, and deferred to her mental health providers on these issues. AR at 378. He also indicated that he could not assess Plaintiff's fund of knowledge or her ability to think abstractly, and relied only on Plaintiff's self-reporting when assessing her concentration. *Id*. Similarly, Dr. Petaja found that Plaintiff's remote memory appeared intact, but did not administer any other memory testing, and opined that Plaintiff's memory was both within normal limits and not within normal limits. *Id*. at 1642-43. Dr. Petaja also discontinued testing Plaintiff's concentration after she attempted serial 7s. *Id*. at 1643. Dr. Petaja did not assess Plaintiff's ability to think abstractly due to "language and cultural differences." *Id*.

These incomplete mental status examination findings undermine the objective support for the opinions, and the ALJ did not err in discounting them on this basis. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Any error in the other lines of the ALJ's reasoning is harmless in light of this valid reasoning, and the Court therefore affirms the ALJ's assessment of the opinions of Drs. Wilkinson and Petaja.

//

ORDER - 6

### C.     Kitti Kaiboriboon, M.D.

Dr. Kaiboriboon, Plaintiff's treating neurologist, completed a DSHS form opinion in October 2020 describing limitations based on Plaintiff's epileptic seizures. AR at 1649-51. Dr. Kaiboriboon acknowledged that Plaintiff's epileptic seizure diagnosis was not supported by objective evidence, yet opined that it caused memory and concentration limitations. *Id*. at 1649. Dr. Kaiboriboon also opined that Plaintiff was limited to performing medium work. *Id*. at 1650.

The ALJ gave little weight to this opinion because it was predicated on an epilepsy diagnosis that was unsupported by objective evidence, as Dr. Kaiboriboon herself admitted, and other evidence in the record indicated that the cause of Plaintiff's seizures was "unknown." AR at 1001. The ALJ also noted that although Dr. Kaiboriboon indicated that Plaintiff's epilepsy caused memory and concentration limitations, she did not specify the degree of limitation. *Id*.

As noted with respect to Dr. Dixon's opinion, the lack of objective support and the failure to assign specific functional limitations are specific, legitimate reasons to discount Dr. Kaiboriboon's opinion. *See Ford*, 950 F.3d at 1156; *Thomas*, 278 F.3d at 957. Although Plaintiff points to treatment notes where Dr. Kaiboriboon indicated that the cause of Plaintiff's seizures was "unknown" and it was unclear whether they were pseudoseizures or epileptic seizures (dkt. # 14 at 17-18), this argument is consistent with the ALJ's decision and fails to account for Dr. Kaiboriboon's indication in the opinion that Plaintiff's epilepsy diagnosis was not supported by objective evidence. *See* AR at 1649. Plaintiff has not established error in the ALJ's assessment of Dr. Kaiboriboon's opinion and the Court therefore affirms this portion of the ALJ's decision.

### D.     Mustafa Mohammed, MHP, MBCHB, AAC

Mr. Mohammed, Plaintiff's treating therapist, wrote a letter and completed an RFC form opinion in March 2022. AR at 1633-37. The form opinion indicates many disabling mental

ORDER - 7

limitations, and Mr. Mohammed opined that Plaintiff's limitations had been that severe since at least 1993. *Id*. The form opinion does not contain any explanation for the limitations, but the letter explains:

> [Plaintiff] presents with anxiety and depression, flashback[s], impaired conce[n]tration, poor sleep and concentration which affect her functioning. She has high levels of irritability, and lack of desire to be around people as she is struggling with fainting attacks and [suicidal ideation]. She has many traumas in Iraq. PTSD causes the brain to relive these traumas when triggered. These, along with other symptoms, make it challenging to seek out and maintain employment. However, she is engaging fully in therapy in our clinic in regular basis.

*Id*. at 1633.

The ALJ gave little weight to Mr. Mohammed's letter and opinion, finding that the "rather extreme restrictions" he indicated in the checkbox form were unaccompanied by citation to findings or explanations of support. AR at 1004. The ALJ found that Mr. Mohammed's letter is "too generalized to provide sufficient rationale to substantiate the detailed limitations in the mental [RFC] form." *Id*. The ALJ also found that the checkbox limitations were inconsistent with Plaintiff's treatment notes, which indicate that Plaintiff experienced some improvement with treatment, that some of her symptoms were attributable to the COVID-19 pandemic, and that many of the objective findings were generally normal. *Id*. at 1004-05. The ALJ also found that the cognitive and social limitations mentioned in Mr. Mohammed's opinion were inconsistent with Plaintiff's ability to pass her driving test and take English classes. *Id*. at 1005.

Lastly, the ALJ noted that some of the checkbox limitations on the form were internally inconsistent. AR at 1005-06. For example, Mr. Mohammed opined that Plaintiff was only moderately limited in her ability to carry out detailed instructions, but markedly limited in her ability to carry out short, simple instructions. *See id*. at 1634. Mr. Mohammed also found that Plaintiff had no limitations in her ability to maintain socially appropriate behavior and to adhere

ORDER - 8

1  to basic standards of neatness and cleanliness, but was markedly limited in her ability to get

2  along with co-workers/peers without distracting them or exhibiting behavioral extremes. *Id*. at

3  1635.

4        The ALJ did not err in discounting Mr. Mohammed's letter and opinion as internally

5  inconsistent. The ALJ pointed to examples of internal inconsistencies in the checkbox

6  limitations, and these undermine the probative value of Mr. Mohammed's opinion. This

7  reasoning is germane and supports the ALJ's assessment of Mr. Mohammed's opinion. *See*

8  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ

9  appropriately considers internal inconsistencies within and between physicians' reports).

10  Although Plaintiff characterizes these inconsistencies as "simple error" (dkt. # 14 at 13), she has

11  not shown that the ALJ was unreasonable in finding that such mistakes undermine the probative

12  value of Mr. Mohammed's opinion. Accordingly, because the ALJ provided at least one germane

13  reason to discount Mr. Mohammed's opinion, the Court affirms the ALJ's assessment of this

14  evidence.

15        **E.**      **Danielle Knoepfler, ARNP**

16        Ms. Knoepfler, Plaintiff's primary care provider, completed DSHS form opinions in

17  December 2016 and May 2017, indicating that Plaintiff cannot work full-time due to convulsions

18  and depression with psychotic features. AR at 302-04, 351-53. The ALJ found that these

19  opinions were unsupported by reference to objective clinical findings, and that Ms. Knoepfler's

20  own treatment notes do not corroborate the opinions, either. *Id*. at 1002. The ALJ also cited

21  normal mental status examination findings that he found inconsistent with Ms. Knoepfler's

22  conclusions, and noted that Plaintiff did not have a medically determinable impairment that

23  caused convulsions. *Id*. For these reasons, the ALJ gave little weight to Ms. Knoepfler's

opinions. *Id*.

Plaintiff challenges the ALJ's reasons for discounting Ms. Knoepfler's opinions, arguing that as a primary care provider, Ms. Knoepfler did not perform mental status examinations. (Dkt. # 14 at 14.) But the ALJ did not discount Ms. Knoepfler's opinions because she failed to perform mental status examinations; the ALJ found that Ms. Knoepfler's conclusions were inconsistent with the many normal mental status examinations in the record. *See* AR at 1002.

Furthermore, Plaintiff has not established error in the ALJ's reasoning that the lack of evidence to corroborate the existence of Plaintiff's psychotic symptoms undermines Ms. Knoepfler's opinions that reference psychotic symptoms. *See* AR at 1002. Although Plaintiff claims that Ms. Knoepfler did not explicitly link Plaintiff's psychosis with the limitations she assigned (dkt. # 14 at 14), this is not entirely accurate. Ms. Knoepfler indicated that Plaintiff's psychotic symptoms left her unable to independently travel short distances in public or use public transportation. *See* AR at 302. Thus, the ALJ reasonably found that the lack of corroboration in the record for the existence of psychotic symptoms undermined Ms. Knoepfler's opinions.

Plaintiff goes on to challenge the ALJ's reasoning with respect to the convulsions referenced by Ms. Knoepfler, arguing that the ALJ overlooked the fact that Ms. Knoepfler indicated that Plaintiff's convulsions would only prevent her from working at heights or around water, but not that they would cause disabling limitations. (Dkt. # 14 at 14-15.) The ALJ's decision does not mischaracterize the extent of Ms. Knoepfler's opinions, however. The ALJ accurately noted that Plaintiff did not have a medically determinable impairment that would cause convulsions (a point which Plaintiff apparently does not challenge), which is a germane reason to discount an opinion that lists convulsions as a diagnosis that "require[s] special

ORDER - 10

accommodations or considerations[,]" even if the accommodations implicated are not disabling. *See* AR at 302, 351. Because the ALJ provided germane reasons to discount Ms. Knoepfler's opinions, the Court affirms this portion of the ALJ's decision.

### F.   Rebecca Nebel, ARNP

Ms. Nebel, Plaintiff's treating nurse, completed a DSHS form opinion in June 2018, indicating that Plaintiff's low back pain rendered her "severely limited," meaning that she could not lift two pounds or could not stand/walk. AR at 804-06. Ms. Nebel also opined that Plaintiff could not stand, sit, or walk for long periods, nor could she engage in any heavy lifting. *Id*.

The ALJ noted that Ms. Nebel did not perform a contemporaneous examination when rendering her opinion, and the ALJ found that the longitudinal record was inconsistent with her conclusions. AR at 1000-01. Specifically, the ALJ cited evidence showing that during a 2018 examination, Plaintiff had normal gait, normal reflexes, and normal muscle strength, bulk, and tone. *Id*. The ALJ noted that Plaintiff's back pain was treated conservatively, with medication and physical therapy, and that Plaintiff did not complete the recommended course of physical therapy. *Id*. The ALJ therefore gave little weight to Ms. Nebel's opinion. *Id*.

Plaintiff argues that the ALJ should have considered whether Ms. Nebel's treatment notes support her conclusions, rather than find that the lack of a contemporaneous examination undermines the support for her opinion. (Dkt. # 14 at 16.) But the ALJ did consider Ms. Nebel's opinion in the context of the longitudinal record and found that it was inconsistent with the imaging reports indicating that Plaintiff's degenerative disc disease was mild/moderate; the many normal objective findings as to functionality; and Plaintiff's conservative treatment recommendations. *See* AR at 1000-01. Plaintiff has not acknowledged these parts of the ALJ's reasoning, nor has she shown that the ALJ erred in finding Ms. Nebel's opinion to be

ORDER - 11

inconsistent with the longitudinal record. This is a germane reason to discount Ms. Nebel's opinion, and the Court therefore affirms this part of the ALJ's decision. *See Bayliss*, 427 F.3d at 1218.

### G. Binisha Shrestha, ARNP

Ms. Shrestha, Plaintiff's primary care provider, completed a DSHS form opinion in March 2022. AR at 1788-92. Ms. Shrestha opined that Plaintiff's low back pain limited her to sedentary work, but also indicated that Plaintiff was not "physically able to sustain a full-time employment even with adjustment to the duties as her chronic back pain has not been adequately controlled despite several physical therapy sessions as recommended by neurosurgeon." *Id*. at 1789-90. Ms. Shrestha opined that Plaintiff's epilepsy rendered her unable to climb and limited her to occasional balancing. *Id*. at 1791.

The ALJ gave little weight to Ms. Shrestha's opinion, finding it inconsistent with the longitudinal record, including Ms. Shrestha's own treatment notes. AR at 1000-01. Specifically, the ALJ cited to imaging reports describing Plaintiff's degenerative disc disease as mild/moderate; the normal functional findings as to Plaintiff's gait, reflexes, and muscle strength; and Plaintiff's failure to follow up on recommended physical therapy. *Id*. The ALJ also noted that Plaintiff did not have a medically determinable impairment (such as epilepsy) that would cause her seizures, and the record contains no objective evidence (such as evidence of tongue injuries, falls, or any observed loss of consciousness) corroborating her reports of seizures. *Id*. at 1001. Lastly, the ALJ noted that Ms. Shrestha's conclusion that Plaintiff could not work touches on an issue reserved to the Commissioner. *Id*.

Plaintiff argues that the ALJ was not qualified to interpret the imaging reports, and that evidence of conservative treatment does not undermine an opinion indicating disability because there is no requirement that a claimant undergo surgery to receive benefits. (Dkt. # 14 at 16.) Plaintiff's arguments here are unavailing. The ALJ did not interpret the imaging data himself, but relied on the providers' own impressions of Plaintiff's condition. *See* AR at 1000 (citing *id*. at 802, 1225-26). The ALJ did not err in considering the findings in the imaging reports when assessing whether the opinion was consistent with the longitudinal record, nor did the ALJ err in concluding that Ms. Shrestha's opinion was undermined by Plaintiff's conservative course of treatment. *See, e.g.*, *Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th Cir. 2022) (affirming an ALJ's discounting of a treating physician's opinion that was inconsistent with the treatment record showing normal findings); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding rejection of treating physician's opinion based on discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment). Because the ALJ provided germane reasons to discount Ms. Shrestha's opinion, the Court affirms the ALJ's assessment of this evidence.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 15th day of May, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 13